## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NOS.**   **12-214, 13-686,** |
| | | **13-687, 14-49** |
| **ISTVAN MERCHENTHALER** | : | |

## GOVERNMENT'S CHANGE OF PLEA MEMORANDUM

**I.**   **Introduction**

Defendant Istvan Merchenthaler will be pleading open (without a plea agreement) to all four of the pending indictments against him.   A plea hearing is scheduled for Monday, October 6, 2014 at 9:30 a.m. before the Honorable Robert F. Kelly.

Defendant Istvan Merchenthaler is charged as follows: in Criminal No. 12-214 ("EDPA Fraud Case"), Counts One through Fourteen of the Superseding Indictment charge Merchenthaler with wire fraud, aggravated identity theft, money laundering, filing false tax returns, and transportation of stolen goods, in violation of 18 U.S.C. §§ 1343, 1028A, 1957 and 1956, 26 U.S.C. § 7206(1), and 18 U.S.C. § 2314, respectively, all arising from his operation of a Ponzi scheme through his purported company PhoneCard USA, his filing of false tax returns, and his theft of automobiles as a fugitive from justice in this District; in Criminal No. 13-686 ("Maryland Case"), Counts One through Three of the Indictment charge Merchenthaler with being a fugitive in possession of ammunition and firearms, possession of unregistered firearms, and possession of an illegally manufactured firearm, in violation of 18 U.S.C. § 922(g)(2), and 26 U.S.C. §§ 5861(d), 5841, and 5845(f) and 5861(c), 5841, and 5845(d), respectively, all arising from the defendant's illegal possession of ammunition, firearms, and improvised explosive devices ("IEDs") in the District of Maryland; in Criminal No. 13-687 ("North Carolina Case"), Counts One through Three of the Indictment charge Merchenthaler with being a fugitive in possession of

firearms and ammunition, a fugitive in possession of ammunition, and possession of an unregistered destructive device, in violation of 18 U.S.C. § 922(g)(2) and 26 U.S.C. §§ 5861(d), 5841, and 5871, respectively, all arising from the defendant's illegal possession of ammunition, firearms, and IEDs in the Eastern District of North Carolina; and in <u>Criminal No. 14-49</u> ("EDPA Explosives Case"), Counts One and Two of the Indictment charge Merchenthaler with possessing unregistered firearms and being a fugitive in possession of a firearm and ammunition, in violation of 26 U.S.C. §§ 5861(d), 5871, and 5845, and 18 U.S.C. § 922(g)(2), respectively, all arising from the defendant's illegal possession of a firearm, ammunition, and IEDs in this District.

## II.   <u>Essential Elements of the Offenses</u>

The elements of wire fraud (18 U.S.C. § 1343) are:

(1)   The defendant devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises;

(2)   The defendant acted with the intent to defraud; and

(3)   In advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

*See* Third Circuit Model Jury Instructions (Criminal) 6.18.1343.

The elements of aggravated identity theft (18 U.S.C. § 1028A) are:

(1)   The defendant knowingly transferred, possessed, or used a means of identification without lawful authority;

(2)   The defendant knew the means of identification that he transferred, possessed, or used belonged to another person; and

(3)   The defendant's transfer, possession, or use of the means of identification was during and in relation to wire fraud.

*See Flores-Figueroa v. United States*, 129 S.Ct. 1886 (2009).

The elements of money laundering under 18 U.S.C. § 1957 are:

(1)     The defendant engaged or attempted to engage in a monetary transaction;

(2)     That defendant knew the transaction involved criminally derived property;

(3)     The property had a value greater than $10,000;

(4)     The property was derived from [name of specified unlawful activity]; and

(5)     The transaction occurred in the United States

*See United States v. Sokolow*, 91 F.3d 396, 408 (3d Cir. 1996); Seventh Circuit Model Jury Instructions (Criminal) 18 U.S.C. § 1957.

The elements of money laundering under 18 U.S.C. § 1956(a)(1)(A)(i) are:

(1)     That on or about the dates alleged in the indictment, the defendant conducted a financial transaction, which affected interstate commerce;

(2)     The defendant conducted the financial transaction with the proceeds of a specified unlawful activity, that is, wire fraud;

(3)     The defendant knew the transaction involved the proceeds of some form of unlawful activity; and

(4)     The defendant intended to promote the carrying on of the specified unlawful activity, that is, wire fraud.

*See* Third Circuit Model Jury Instructions (Criminal) 6.18.1956A.

The elements of filing a false tax return (26 U.S.C. § 7206(1)) are:

(1)     The defendant made and subscribed and filed an income tax return;

(2)     The tax return is verified by a written declaration that it was made under the penalties of perjury;

(3)     The return was false regarding a material matter;

(4)     The defendant did not believe the return was true and correct as to that material matter; and

(5)     The defendant acted willfully.

*See* Third Circuit Model Jury Instructions (Criminal) 6.26.7206.

The elements of interstate transportation of stolen property (18 U.S.C. § 2314) are:

(1)     The defendant transported, transmitted or transfered;

(2)     in interstate or foreign commerce;

(3)     goods, wares, merchandise, securities or money of the value of $5,000 or more; and

(4)     knowing the same to have been stolen, converted or taken by fraud.

*United States v. Arden*, 433 F. App'x 127, 131 (3d Cir. 2011).

The elements of possession of an unregistered firearm (26 U.S.C. § 5861(d)) are:

(1)     The defendant knowingly possessed a firearm;

(2)     The firearm was not registered to the defendant in the National Firearms Registration and Transfer Record; and

(3)     The defendant knew of the specific characteristics or features of the firearm that made it subject to registration under the National Firearms Registration and Transfer Record.

*See* Seventh Circuit Model Jury Instructions (Criminal) 26 U.S.C. § 5681(d); Ninth Circuit Criminal Pattern Jury Instruction 9.34; Eleventh Circuit Criminal Pattern Jury Instruction 106.1.

The elements of possession of an illegally manufactured firearm (26 U.S.C. § 5861(c)) are:

(1)     The defendant knowingly received or possessed a firearm;

(2)     The firearm was made in violation of the National Firearms Act, specifically the defendant did not receive the approval of the Secretary of the Treasury to make and register the firearm; and

(3)     The defendant knew of the features or characteristics of the firearm that violated the National Firearms Act, specifically that it was a shotgun with a barrel of less than 18 inches in length.

4

*See* Pattern Jury Instructions, District of South Carolina, 26 U.S.C. §§ 5861(c), *United States v. Combs*, 762 F.3d 1343, 1346 (9th Cir. 1985).

  <u>The elements of fugitive possession of firearm or ammunition (18 U.S.C. § 922(g)(2)) are:</u>

(1)  The defendant was a fugitive from justice;

(2)  The defendant knowingly possessed a firearm or ammunition; and

(3)  The firearm or ammunition traveled in interstate or foreign commerce at some point during its existence.

*See* Pattern Jury Instructions, District of South Carolina, 18 U.S.C. § 922(g)(2).

## III. <u>Maximum Penalties</u>

  The Court may impose the following statutory maximum and mandatory minimum sentences:

  in <u>Criminal No. 12-214</u> (EDPA Fraud Case), for each of Counts One through Four (wire fraud), 20 years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment; for each of Counts Five and Six (aggravated identity theft), two (2) years' mandatory minimum imprisonment consecutive to any other sentence of imprisonment, one year of supervised release, a $250,000 fine, and a $100 special assessment; for each of Counts Seven Through Ten (money laundering), ten (10) years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment; for each of Counts Eleven and Twelve (filing false tax returns), three (3) years' imprisonment, one year of supervised release, a $250,000 fine, and a $100 special assessment; for each of Counts Thirteen and Fourteen (interstate transportation of stolen property), ten (10) years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment;

in <u>Criminal No. 13-686</u> (Maryland Case), Count One (possession of firearm by fugitive),
10 years' imprisonment, a three year period of supervised release), a $250,000 fine, and a $100
special assessment; Count Two (possession of unregistered firearm), 10 years' imprisonment, a
three year period of supervised release), a $250,000 fine, and a $100 special assessment; and
Count Three (possession of illegally manufactured firearm), 10 years' imprisonment, a three year
period of supervised release), a $250,000 fine, and a $100 special assessment;

in <u>Criminal No. 13-687</u> (North Carolina Case), Count One (possession of firearm and
ammunition by fugitive), 10 years' imprisonment, a three year period of supervised release), a
$250,000 fine, and a $100 special assessment; Count Two (possession of ammunition by fugitive),
10 years' imprisonment, a three year period of supervised release), a $250,000 fine, and a $100
special assessment; and Count Three (possession of unregistered firearm), 10 years'
imprisonment, a three year period of supervised release), a $250,000 fine, and a $100 special
assessment;

in <u>Criminal No. 14-49</u> (EDPA Explosives Case), Count One (possession of firearm and
ammunition by fugitive), 10 years' imprisonment, a three year period of supervised release), a
$250,000 fine, and a $100 special assessment; and Count Two (possession of unregistered
firearms), 10 years' imprisonment, a three year period of supervised release), a $250,000 fine, and
a $100 special assessment.   Further, the defendant understands that because he was charged with
committing crimes while on pretrial release, pursuant to 18 U.S.C. § 3147, a term of imprisonment
imposed under this section shall be consecutive to any other sentence of imprisonment.

<u>Total Maximum and Mandatory Minimum Sentence</u> is: 230 years' imprisonment including
two years' mandatory minimum imprisonment, a three year period of supervised release, $5.5

million fine, and $2,200 special assessment.   Restitution will be ordered.   Forfeiture of any property derived from proceeds obtained directly or indirectly from the offenses, any property involved in the offenses, and any property traceable to such property, as well as firearms and ammunition, also may be ordered.

The defendant further understands that supervised release may be revoked if its terms and conditions are violated.   When supervised release is revoked, the original term of imprisonment may be increased by up to two (2) years per count of conviction on all counts, except Counts Five and Six (aggravated identity theft) and Counts Eleven and Twelve (filing false tax returns) in Criminal No. 12-214, for which the original term of imprisonment may be increased by up to one (1) year per count of conviction.   Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

IV.   **Factual Basis for the Plea**

A.   **Criminal No. 12-214 (Counts One through Fourteen of EDPA Fraud Case)**

From at least about May 2006 to about September 2011, defendant Istvan Merchenthaler claimed to be the founder of PhoneCard USA, a company that was purportedly a "premier distribution source" for prepaid phone cards and cell phones.   However, according to the Pennsylvania Department of State, there has never been any business registration for PhoneCard USA in Pennsylvania.   In fact, Merchenthaler operated a "Ponzi" scheme, obtaining millions of

dollars from investors and using much of these funds for his own benefit and to perpetuate the scheme.

Merchenthaler approached investors and persuaded them to make capital loan investments in PhoneCard USA.   In his marketing materials, Merchenthaler falsely claimed that these capital loan investments would finance the "exponential growth" of PhoneCard USA and would provide investors with "generous returns" on their investments.   Further, Merchenthaler falsely claimed in these materials that PhoneCard USA generated monthly revenues of $4.8 million.

Merchenthaler signed contracts with investors stating that returns on investments -- called "commissions" -- would begin six (6) months from the date of the original investment.   These contracts stated that commissions would be provided monthly for a period of 18 months. Merchenthaler's contracts and marketing materials promised investors that, with an original investment of $35,000 or more, they would make over five (5) times their original investment over this 18 month period.

In his marketing materials, Merchenthaler falsely claimed that PhoneCard USA had "lucrative contracts" with major retail chain stores "covering territories that span the east coast." Specifically, in these materials, and in his communications to investors, Merchenthaler falsely claimed PhoneCard USA had contracts with these major retail chain stores, including Walmart, 7-Eleven, and BJ's Wholesale Club.   In fact, Merchenthaler had no such contracts with these major retail chain stores.

In order to con investors into believing he had a contract with Walmart, Merchenthaler falsely claimed to investors that he was a personal friend of T.S., a Walmart executive.   In addition, Merchenthaler falsely claimed to investors that he had saved the life of T.S.'s son while

serving as a special forces solider in Iraq.   In fact, T.S. did not know Merchenthaler and Merchenthaler had never served in the military.   Further, Merchenthaler fraudulently used an e-mail address with T.S.'s name to dupe investors into believing they would have business meetings with T.S. in Philadelphia, New York, or Florida.

Merchenthaler falsely claimed to investors that PhoneCard USA had a contract with 7-Eleven to sell phone cards, prepaid phones, and prepaid "adult entertainment cards."   Further, Merchenthaler prepared a bogus contract between PhoneCard USA and 7-Eleven that Merchenthaler used to dupe investors.   This bogus contract contained the name and purported signature of A.B., a 7-Eleven executive.   Merchenthaler falsely claimed to investors that he was a personal friend of A.B..   In fact, A.B. does not know Merchenthaler.

Merchenthaler repaid portions of loans back to investors in order to lull them into a false sense of security and to obtain additional investments from them and new investors.   In communications with investors, Merchenthaler provided bogus explanations for his failure to pay commissions, including blaming the failure on embezzlement by his purported employees.

Merchenthaler offered to make monthly payments on new cars for some investors if they helped Merchenthaler meet "performance levels" of new investments in PhoneCard USA.   After obtaining additional investments, Merchenthaler made several car payments for these investors before halting these payments altogether.

Rather than use the investor funds as promised, Merchenthaler used the funds to pay himself, his family, and personal expenses; to buy expensive cars, jewelry, and firearms; to wire money overseas; and to perpetuate his "Ponzi" scheme by paying some investors commissions and "referral fees."   Merchenthaler continued to perpetrate his Ponzi scheme while on pretrial release.

9

Merchenthaler stole over $2 million from over 200 victims.

In furtherance of his wire fraud scheme in violation of 18 U.S.C. § 1343, Merchenthaler caused at least the following wires to occur:

Count One: On June 16, 2009, victim investor P.B. wired $38,000 from Zurich, Switzerland to New York, New York to Merchenthaler's Sovereign Bank account in Wyomissing, Pennsylvania.

Count Two: On October 23, 2009, victim investor C.A. wired $205,000 from San Francisco, California to Minneapolis, Minnesota to Merchenthaler's Sovereign Bank account in Wyomissing, Pennsylvania.

Count Three: On October 26, 2009, victim investor C.A. wired another $195,000 from San Francisco, California to Minneapolis, Minnesota to Merchenthaler's Citadel bank account in Exton, Pennsylvania.

Count Four: On December 2, 2009, victim investor P.W. wired $250,000 from St. Louis, Missouri to Minneapolis, Minnesota to Merchenthaler's Citadel bank account in Exton, Pennsylvania.

Merchenthaler committed the following aggravated identity thefts in violation of 18 U.S.C. § 1028A:

Count Five: From May 2006 to February 2013, in this District, Merchenthaler, knowingly and without lawful authority, possessed and used the name of T.S., whom Merchenthaler knew was a real person, during and in relation to Merchenthaler's wire fraud scheme.

Count Six: From May 2006 to February 2013, in this District, Merchenthaler, knowingly and without lawful authority, possessed and used the name of A.B., whom Merchenthaler knew

was a real person, during and in relation to Merchenthaler's wire fraud scheme.

Merchenthaler committed the following money laundering violations under 18 U.S.C. § 1957:

Count Seven: On October 8-14, 2008, in this District, Merchenthaler deposited two separate $50,000 checks from victim investors R.G. and D.G. into his Sovereign Bank account ending in 9522.   On October 20, 2008, Merchenthaler wrote a $69,000 check on this account to Mercedez Benz of West Chester in this District to purchase a 2009 Mercedes Benz C-class luxury sedan.

Count Eight: On January 15-20, 2009, in this District, Merchenthaler deposited $35,000 in investment checks from several victim investors into his Sovereign Bank account ending in 9522. On January 22, 2009, Merchenthaler wrote a check for $19,500 on this account to Exton Nissan in this District to put toward the purchase of a 2009 Nissan GT-R sports car.

Merchenthaler committed the following money laundering violations under 18 U.S.C. § 1956(a)(1)(A)(i):

Count Nine: On October 19, 2009, in this District, in order to further his "Ponzi" scheme and generate more referrals, Merchenthaler wrote check #455 in the amount of $32,500 to investor M.A. from Merchenthaler's Citizens Bank account ending in 2837. Merchenthaler knew this financial transaction involved the proceeds of a specified unlawful activity, that is, wire fraud.

Count Ten: On December 23, 2009, in this District, in order to further his "Ponzi" scheme and generate more referrals, Merchenthaler wired $26,000 to victim investor P.B. from Merchenthaler's Citizens Bank account ending in 2837. Merchenthaler knew this financial transaction involved the proceeds of a specified unlawful activity, that is, wire fraud.

Merchenthaler filed the following false tax returns in violation of 26 U.S.C. § 7206(1):

Count Eleven: On April 15, 2009, in this District, Merchenthaler electronically filed with the Internal Revenue Service ("IRS") his United States income tax return, Form 1040, for the calendar year 2008.   Merchenthaler's income tax return was prepared by an accountant with the filing status of married, as Merchenthaler filed jointly with his wife.   Merchenthaler verified in a written declaration that this income tax return was made under the penalty of perjury.   In this income tax return, Merchenthaler falsely reported that he had no taxable income in 2008 and falsely listed his occupation as "disabled."   At the time he filed this income tax return, Merchenthaler knew he was failing to report to the IRS taxable income of approximately $378,118.   This resulted in a tax loss of approximately $111,417 to the government.   In making, subscribing, and filing this false income tax return, Merchenthaler had actual knowledge that the law imposed a legal duty on truthful statements and disclosures, and Merchenthaler voluntarily and intentionally violated that duty.

Count Twelve: On October 18, 2010, in this District, Merchenthaler manually filed with the IRS his United States income tax return, Form 1040, for the calendar year 2009. Merchenthaler prepared this income tax return himself with the filing status of single, even though he was married.   Merchenthaler verified in a written declaration that this income tax return was made under the penalty of perjury.   In this income tax return, Merchenthaler falsely reported that he had no taxable income in 2009 and listed his occupation as "unclassified."   At the time he filed this income tax return, Merchenthaler knew he was failing to report to the IRS taxable income of approximately $992,887.28.   This resulted in a tax loss of approximately $321,767 to the government.   In making, subscribing, and filing this false income tax return, Merchenthaler had

actual knowledge that the law imposed a legal duty on truthful statements and disclosures, and
Merchenthaler voluntarily and intentionally violated that duty.

Merchenthaler transported stolen property across state lines in violation of 18 U.S.C. §
2314 as follows:

Count Thirteen: On February 11, 2013, the Pennsylvania State Police ("PSP") stopped a
white 2013 Dodge Charger SRT8, VIN #2C3CDXEJ7DH525221, for traffic violations near
Oxford Pennsylvania.   PSP troopers were unable to obtain any license or registration paperwork
from the driver, who identified himself as "Joey Gallow."   While conducting license and
registration checks, the driver fled from the scene in the Charger.   PSP troopers later identified the
driver as Merchenthaler.   Merchenthaler had previously stolen this vehicle from Hendrick Dodge
in Cary, North Carolina while he was a fugitive from this District and drove it to Pennsylvania, in
this District.   This vehicle was valued at approximately $56,000.

Count Fourteen: On October 15, 2012, Merchenthaler fled as a fugitive while on bail in this
District and stole a black 2012 Jeep Grand Cherokee SRT8 sport utility vehicle, VIN #
1C4RJFD7CC340646 from David Dodge in Glen Mills, Pennsylvania.   Merchenthaler told the
dealership that he was taking the vehicle for a test drive but never returned it.   Merchenthaler
admitted this theft and his fugitive status in an e-mail to his Pretrial Officer that same day.   This
vehicle was valued at approximately $61,718.   Merchenthaler drove this vehicle to Maryland.
On or about February 15, 2013, the Maryland State Police arrested Merchenthaler in this vehicle.

**B.    Criminal No. 13-686 (Counts One through Three of the Maryland Case)**

On or about February 16, 2013, local law enforcement in Maryland obtained and executed
search warrants for storage units, residences, and vehicles including 98 Greenmount Drive,

Storage Unit # 244 and 111 Greenmount Drive, Apartment #2 – both being rented by Merchenthaler under an alias in Rising Sun, Maryland, and 4414 Madonna Road, Street, Maryland – Merchenthaler's parents' house.   Some of the items found in Merchenthaler's possession in Maryland are detailed below.

Count One: On February 16, 2013, in the District of Maryland, and while he was a fugitive from justice, Merchenthaler knowingly possessed, in and affecting interstate commerce, approximately 11,000 rounds of ammunition in various calibers and approximately 14 firearms, including:

an American Derringer Model 1, .410 cal./.45 cal., Serial No. 134213;

a Browning Buck Mark, .22 cal., Serial No. 655pp17016;

a Glock Model 23, .40 cal., Serial No. MPF 191;

a Glock Model 23, .40 cal., Serial No. EPM901;

a Makarov 9mm, Serial No. 073;

a Maverick Model 88, 12 gauge, Serial No. TR1088301;

a Mossberg Model 500, 12 gauge, Serial No. P569425;

a Mossberg Model 930, 12 gauge, Serial No. T672920;

a Sig Sauer Model P238, .380 cal., Serial No. DA017202;

a Sig Sauer Model P556, 5.56 mm, Serial No. TP006968;

a Smith & Wesson Airlight PD, .44 cal., Serial No. CMJ5827;

a Taurus Judge, .410 cal./.45 cal., Serial No. EM345287;

a Walther G22, .22 cal., Serial No. PW022301; and

a Walter PPK/S, .380 cal., Serial No. S042286.

The above ammunition and firearms were not manufactured in Maryland.

Count Two: On February 16, 2013, in the District of Maryland, Merchenthaler knowingly possessed approximately 135 improvised explosive devices ("IEDs") consisting of cardboard tubes center primed with flash powder.   These were firearms, as defined in 26 U.S.C. § 5845(a)(8) & (f), and were not registered to Merchenthaler in the National Firerms Registration and Transfer Record.   Merchenthaler knew of the specific characteristics or features of the firearms that made them subject to registration under the National Firearms Registration and Transfer Record, namely that they were destructive devices.   The FBI Laboratory found Merchenthaler's fingerprints on approximately 11 IEDs.

Count Three: On February 16, 2013, in the District of Maryland, Merchenthaler knowingly possessed a Stoeger Coachman 12 Gauge shotgun, Serial Number 351639, with a barrel of less than 18 inches in length, a firearm, as defined in 26 U.S.C. § 5845(a)(1) & (d), and made in violation of the National Firearms Act.   Merchenthaler knew of the features or characteristics of the firearm that violated the National Firearms Act, namely that it was a shotgun with a barrel of less than 18 inches in length.   Merchenthaler was not approved as a manufacturer by the Secretary of the Treasury.

### C.    Criminal No. 13-687 (Counts One through Three of the North Carolina Case)

On February 16-21, 2013, local law enforcement in North Carolina obtained and executed search warrants for storage units and apartments including Merchenthaler's storage unit #00A4 at North State Storage, 5835 Carolina Beach Road, Wilmington, North Carolina and his apartment at 8116 Mainsail Lane, Wilmington, North Carolina.   Merchenthaler was renting these properties under an alias.   Some of the items found in Merchenthaler's possession in North Carolina are

15

detailed below.

    Count One: Between October 16, 2012 and February 15, 2013, in the Eastern District of

North Carolina, and while he was a fugitive from justice, Merchenthaler knowingly possessed,

approximately 20 rounds of ammunition and a Glock .357 caliber pistol with Serial No. HBN539.

The ammunition and pistol were not manufactured in North Carolina.

    Count Two: Between November 7, 2012 and February 15, 2013, in the Eastern District of

North Carolina, and while he was a fugitive from justice, Merchenthaler knowingly possessed, in

and affecting interstate commerce, approximately 560 rounds of ammunition. The ammunition

was not manufactured in North Carolina.

    Count Three: Between November 7, 2012 and February 15, 2013, in the Eastern District of

North Carolina, Merchenthaler knowingly possessed IEDs consisting of approximately 7 PVC

pipes and approximately 32 cardboard tubes, all center primed with flash powder.   These were

firearms, as defined in 26 U.S.C. § 5845(a)(8) & (f), and were not registered to Merchenthaler in

the National Firerms Registration and Transfer Record.   Merchenthaler knew of the specific

characteristics or features of the firearms that made them subject to registration under the National

Firearms Registration and Transfer Record, namely that they were destructive devices.

    **D.      Criminal No. 14-49 (Counts One and Two of the EDPA Explosives Case)**

    On March 7, 2013, the FBI and local law enforcement searched Public Storage Unit

#A1007 and Unit #A3002 at 49 Lancaster Avenue, Frazer, Pennsylvania that Merchenthaler was

using and controlling while he was a fugitive from this District.   Merchenthaler rented these

storage units under an alias.   Some of the items the FBI and local law enforcement found in

Merchenthaler's possession in this District are detailed below.

16

<u>Count One:</u>   From September 5, 2012 to March 7, 2013, in this District, Merchenthaler knowingly possessed IEDs consisting of approximately 60 PVC pipes (some containing nails) and approximately 400 cardboard tubes, all center primed with flash powder.   These were firearms, as defined in 26 U.S.C. § 5845(a)(8) & (f), and were not registered to Merchenthaler in the National Firerms Registration and Transfer Record.   Merchenthaler knew of the specific characteristics or features of the firearms that made them subject to registration under the National Firearms Registration and Transfer Record, namely that they were destructive devices.

<u>Count Two:</u> From September 5, 2012 to March 7, 2013, in this District, and while he was a fugitive from justice, Merchenthaler knowingly possessed a 9mm Cobray M-11 semi-automatic machine pistol, Serial No. 89-0050288 and numerous rounds of ammunition.   Neither the pistol nor the ammunition were manufactured in Pennsylvania.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney

 /s Vineet Gauri
VINEET GAURI
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this date, I caused a true and correct copy of the foregoing

Government's Change of Plea Memorandum to be served by electronic mail upon the following:


Mark Wilson, Esq.
Mark_Wilson@fd.org

Elizabeth Toplin, Esq.
Elizabeth_Toplin@fd.org




_/s Vineet Gauri_____
VINEET GAURI
Assistant United States Attorney


Date: October 3, 2014